THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:04-cr-00040-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA,　)<br>　　　　　　　　　　　　　　)<br>　　　　　　　Plaintiff,　　　)<br>　　　　　　　　　　　　　　)<br>　vs.　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>STEPHEN ARTHUR LACY,　　　　)<br>　　　　　　　　　　　　　　)<br>　　　　　　　Defendant.　　　)<br>_____　) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's "Motion to Reconsider and Amend Order" Doc. 65] and the Defendant's "Motion to Reconsider under the First Step Act" [Doc. 67] (collectively "the Motions to Reconsider").

**I.　BACKGROUND**

In December 2005, the Defendant Stephen Arthur Lacy was convicted of Hobbs Act robbery and possession of a firearm in relation to a crime of violence. He was sentenced to a total of 288 months' imprisonment. [Doc. 32]. The Defendant is currently incarcerated at FCI Otisville, and his projected release date is July 20, 2024.[1]

---

[1] See https://www.bop.gov/inmateloc/ (last visited May 25, 2021).

In August 2020, the Defendant moved for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing the ongoing COVID-19 pandemic. [Doc. 62]. Specifically, the Defendant argued that his age (64) and various underlying health conditions placed him at a higher risk for severe illness from COVID-19, and that his particular vulnerability to the illness was an extraordinary and compelling reason for an immediate sentence reduction to time served. [Id.]. Alternatively, the Defendant requested to serve the remainder of his sentence on home confinement. [Id.].

The Court denied the Defendant's motion. [Doc. 63]. In so doing, the Court concluded that the Defendant had failed to establish that either his age or any of his underlying medical conditions qualified as an extraordinary and compelling reason under the policy statement set forth in U.S.S.G. § 1B1.13. [Id. at 3-5]. The Court further held that the possibility that the pandemic could spread to the Defendant's particular facility was insufficient to constitute an extraordinary and compelling reason for a sentence reduction. [Id. at 5-6]. Finally, the Court denied the Defendant's alternative request for a release to home confinement, concluding that the discretion to release the Defendant to home confinement lies solely with the Attorney General. [Id. at 6].

The Defendant now seeks reconsideration of the Court's Order denying his request for compassionate release. [Docs. 65, 67].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits the Court to reduce a defendant's sentence for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

In denying the Defendant's motion for compassionate release, the Court relied in part on § 1B1.13 of the United States Sentencing Guidelines, which sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy

statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Nevertheless, the McCoy Court recognized that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Thus, even though the Court is not required to follow § 1B1.13 in considering a defendant's request for a sentence reduction, it remains a useful tool in evaluating compassionate release requests. As such, the Court's prior analysis of the Defendant's medical conditions and his susceptibility to complications from COVID-19 remains valid.[2]

In seeking reconsideration, the Defendant contends that the COVID-19 pandemic "is still in full swing, with no end in sight" and that each day that he remains in prison "presents a new threat to his life, regardless of the statistics shown on the BOP's website." [Doc. 65 at 6]. Contrary to the

---

[2] To the extent that the Defendant now contends that he has reached the age of 65 and thus may satisfy the requirements U.S.S.G. § 1B1.3 cmt. n.1(B), this is a new circumstance for which the Defendant must initiate a new compassionate release request to the warden of his facility before seeking relief from the Court. See 18 U.S.C. § 3582(c)(1)(A)(i).

4

Defendant's arguments, the Court finds that the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, BOP is in the process of vaccinating inmates, which will offer inmates further protection from the virus. Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders.[3] Given BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's

---

[3] The effects of these mitigation efforts in evident in the fact that FCI Otisville has had a total of 86 coronavirus cases among its inmate population and 36 among its staff, but currently has only three positive cases among its inmate population and only one current case among its staff. See https://www.bop.gov/coronavirus/ (last visited May 25, 2021).

statutory role, and its extensive and professional efforts to curtail the virus's spread.").

In sum, the Court finds that there is no basis in law or fact for the Court to reconsider its prior determination that there are no "extraordinary and compelling reasons" for the Defendant's release. Accordingly, the Defendant's motions for reconsideration are denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motions to Reconsider [Docs. 65, 67] are **DENIED**.

**IT IS SO ORDERED.**

Signed: May 31, 2021

Martin Reidinger
Chief United States District Judge