THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:04-cr-00040-MR-WCM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| STEPHEN ARTHUR LACY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Compassionate Release Pursuant to the 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act of 2018 § 603(b). [Doc. 69].

**I.  BACKGROUND**

In June 2004, the Defendant Stephen Arthur Lacy pled guilty to one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One), and one count of using and carrying a firearm in furtherance of a crime of violence, namely Hobbs Act robbery, in violation of 18 U.S.C. § 924(c) (Count Two). [Doc. 14: Entry and Acceptance of Guilty Plea]. On December 9, 2005, the Court[1] sentenced the Defendant to a term of 204 months'

---

[1] The Honorable Lacy H. Thornburg, United States District Judge, presiding. Upon Judge Thornburg's retirement, this matter was reassigned to the undersigned.

imprisonment on Count One and a term of 84 months' imprisonment on Count Two, for a total term of imprisonment of 288 months. [Doc. 32]. The Defendant is currently housed at FCI Otisville, and his projected release date is July 20, 2024.[2]

On August 24, 2020, the Defendant filed his first motion for compassionate release based upon COVID-19. [Doc. 62]. The Court denied the motion on September 8, 2020, finding that the grounds asserted did not constitute "extraordinary and compelling" reasons to reduce his sentence. [Doc. 63]. The Defendant filed a motion to reconsider that denial on October 5, 2020. [Doc. 65]. The Court denied that motion on October 13, 2020. [Doc. 66]. In response, the Defendant filed a motion to reconsider the denial of the first motion to reconsider, which the Court denied on June 1, 2021. [Docs. 67, 68]. Now the Defendant has filed a second motion for compassionate release, again asserting that he has various health concerns that enhance his risks associated with COVID-19. [Doc. 69]. He also claims that changes to the law concerning his § 924(c) conviction and career offender status constitute an extraordinary and compelling reason for release. [Id.].

---

[2] See https://www.bop.gov/inmateloc/ (last accessed Oct. 25, 2021).

The Court directed the Government to respond to the Defendant's motion. [Text-Only Order dated July 15, 2021]. The Government filed its Response on August 13, 2021. [Doc. 72]. The Defendant filed his Reply on August 24, 2021. [Doc. 73].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government does not dispute that the Defendant has sufficiently exhausted his administrative remedies with BOP by requesting compassionate release from the Warden of his facility. [Doc. 72 at 2]. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by

3

the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

The policy statement set forth in § 1B1.13, however, is not binding on this Court. Section 1B1.13 was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, as the Court in McCoy recognized, this policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. The Defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

In support of his request for compassionate release, the Defendant first asserts that he has serious physical and medical conditions—including hypertension, chronic kidney disease, obesity, a history of hepatitis and tuberculosis, a history of smoking, and abnormal blood chemistry—that increase his risk of serious illness or death from COVID-19. [Doc. 69 at 1]. Although the Defendant's medical records confirm that his current list of diagnoses is largely accurate, these records also indicate that the BOP medical staff has provided him with the appropriate treatment and medication for these conditions. [See Doc. 64]. There is nothing in such records to indicate that these conditions are uncontrolled or that they substantially diminish his ability to provide self-care within the prison setting.

While the Defendant argues that these conditions increase his risk of illness or death from COVID-19, the Court notes that the BOP has taken significant measures to protect the health of its inmates from the virus. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, BOP has begun the process of vaccinating inmates, including the

Defendant, which will offer inmates further protection from the virus.[3] Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given the BOP's efforts, and the Defendant's vaccinated status, the fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The Defendant also requests that the Court grant him compassionate release on the grounds that Hobbs Act robbery is no longer a crime of violence, and thus he would no longer be subject to a § 924(c) conviction if sentenced today. In support of this argument, the Defendant cites the recent decision in United States v. Green, 996 F.3d 176, 184 (4th Cir. 2021), which

---

[3] The BOP administered the Pfizer vaccine to the Defendant on March 31, 2021, and he received his booster on April 21, 2021, so the Defendant is now fully vaccinated against the coronavirus. [See Doc. 72-1].

held that Hobbs Act robbery does not qualify as a "crime of violence" under the career offender provision of the Sentencing Guidelines. This argument, however, is meritless. The Fourth Circuit's decision in Green relates only to the definition of "crime of violence" under the career offender guideline; it has not applicability to the issue of whether Hobbs Act robbery still serves as a predicate for a § 924(c) conviction. The Fourth Circuit held in United States v. Mathis, 932 F.3d 242, 266 (4th Cir. 2019), that Hobbs Act robbery categorically qualifies as a crime of violence to support a § 924 conviction, and that holding is undisturbed by Green. See United States v. Bennett, 848 F. App'x 596, 597 (4th Cir. May 29, 2021) (unpublished) (holding that Hobbs Act robbery is a valid § 924(c) predicate, citing Mathis); United States v. Vanderhorst, -- F. App'x --, 2021 WL 2947728, at *1 (4th Cir. July 14, 2021) (unpublished) (same); Hallman v. United States, 3:21-cv-00255-MOC, 2021 WL 2518218, at *3 (W.D.N.C. June 18, 2021) ("And Green does not undermine Mathis' holding that Hobbs Act robbery is a crime of violence for § 924(c) purposes.").

The Defendant also argues that he would not be a career offender if he were re-sentenced today, citing Green. Even assuming that the Defendant is correct in this assertion, however, this fact alone does not automatically entitle McBride to a compassionate release. In McCoy, the

8

Fourth Circuit held only that the district courts had discretion to consider "the severity of the defendants' ... sentences and the extent of the disparity between the defendants' sentences and those provided for under [current law]," when deciding a motion for compassionate release. 981 F.3d at 286. "Nothing in McCoy, however, requires the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021). Rather, the Court must decide whether a reduction in sentence is warranted "based on a 'full consideration of the Defendant's individual circumstances.'" Id. (quoting McCoy, 981 F.3d at 286). Such circumstances include the length of time already served, any rehabilitative efforts made while incarcerated, the defendant's prior criminal history, and the defendant's age at the time of the offense. McCoy, 981 F.3d at 286.

Here, considering the Defendant's arguments regarding his career offender status and his health conditions, along with the sentencing factors in 18 U.S.C. § 3553(a), the Court concludes that the Defendant has failed to show extraordinary and compelling reasons for a compassionate release. The Defendant's crimes of conviction were violent and extremely serious.

9

He robbed two convenience stores with a firearm on two successive days in 2004. [Doc. 74: PSR at 5]. During the first robbery, he pointed a gun at the cashier, demanded money, and fled with an alcoholic beverage and $200. [Id.]. During the second robbery, when the cashier initially refused to surrender the demanded cash, the Defendant pointed a gun at him and pulled the trigger. [Id.]. When the gun failed to discharge, the Defendant charged behind the counter, shoved a woman, and fought with the cashier. [Id.]. He then fled the store with $100 from the register and a pack of cigarettes. [Id.]. The gun fell to the floor during the struggle, and when the police recovered the firearm, they discovered that it was loaded with seven rounds of .25 caliber ammunition. [Id. at 5-6].

The Defendant was 47 years old at the time of his offenses of conviction. Prior to these offenses, the Defendant was already a convicted felon with a long record. He had 15 criminal history points, making him a level VI for sentencing—even without the career offender enhancement. [Id. at 14]. He was released from state prison less than one month prior to the robberies that brought him to federal court. [Id. at 6, 14]. His convictions include approximately eight property-related crimes, including breaking and entering, felony larceny, and possession of stolen goods; two drug-related crimes; and two assaults, including striking an Asheville Police officer in the

face and chest with his fists. [Id. at 9-14]. He also has four prior convictions for robbing people at gunpoint. [Id. at 13-14].

The Defendant has demonstrated that he is very difficult to deter from criminal conduct and has no respect for the law. The Defendant's history and characteristics are marked by frequent drug use, property crimes, violent crimes, and gang affiliation. [Id. at 18-19]. Further, he had little redeeming vocational or educational experience prior to being incarcerated. [Id. at 19].

The Defendant has made commendable efforts at rehabilitation during his 17 years in prison. He has obtained his G.E.D.; earned an Associate's Degree in Bible Theology; completed the BOP's Non-Residential Drug Abuse Program; earned a diploma for completion of a 250-hour Addiction Studies Program; been certified as a Drug and Alcohol Treatment Specialist; and completed vocational training, including obtaining a license to operate a forklift. [Doc. 73 at 8-9; Docs. 73-6 to 73-11]. Nevertheless, in light of the serious nature of the Defendant's offense and his criminal history, the Court finds that the relevant § 3553(a) sentencing factors, including the need for the sentence to reflect the true extent and seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes, counsel against the Defendant's compassionate release.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's Motion for Compassionate Release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Compassionate Release Pursuant to the 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act of 2018 § 603(b) [Doc. 69] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 28, 2021

Martin Reidinger
Chief United States District Judge